IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

FILED
CLERK, U.S. DISTRICT COURT
May 2, 2005 (9:32am)
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>EZEQUIEL ROBLES ESQUIVEL,<br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br>Case No. 2:04-CR-562 TS |

This matter came before the court on February 14, 2005, for hearing on Defendant's Motion to Suppress. Briefing was completed on March 31, 2005. The court finds and concludes as follows:

## I. FINDINGS OF FACT

On August 5, 2005, Sgt. Mangelson of the Utah Highway Patrol was working a construction shift on 1-15 in the vicinity of the I-70 split near Cove Fort, Utah. Sgt. Mangelson is an experienced law enforcement officer. He is a member of the Utah Highway Patrol (UHP) Interdiction Team. He has had many training courses in drug interdiction, teaches some drug interdiction courses, and has been involved in numerous arrests involving drugs. Due to his training and experience, he is familiar with the smells

of raw marijuana and burning marijuana. He also has learned that I-15 is a known drug corridor, but admitted that all of the three major interstate highways in Utah may be considered drug corridors.

In Sgt. Mangelson's experience and training, drug smugglers often have air fresheners in their vehicles to mask the smell of drugs, do not own the vehicles they drive, and have brand new driver's licenses or identity cards with fictitious information. In addition, in his experience and training, the following can be common characteristics of drug smugglers: they are under the influence of drugs themselves; have an unkept personal appearance; are driving vehicles with a "lived-in look," meaning trash from fast food and "to go" cups; possess little luggage; exhibit signs of nervousness such as trembling hands, sweating, pulsating carotid artery in the neck and a "scared to death" look. He testified that on occasions when he has smelled burnt marijuana inside a vehicle, he almost always has found raw marijuana inside the vehicle.

At the end of his construction shift, Sgt. Mangelson noticed a silver vehicle traveling on I-15. He noticed that it did not have a front license plate. As it went past him, he noticed that the right tail light was taped with some red tape and that it had a rear license plate from Colorado. Colorado and Utah both require front license plates. Because the vehicle was missing a front plate, he suspected that it was stolen or improperly licensed. He followed the vehicle and initiated a traffic stop. He approached the vehicle from the passenger side. When he arrived at the vehicle, the passenger side window was down.

Sgt. Mangelson asked the driver, Defendant Ezequiel Robles Esquivel, for his driver's license and registration. When he leaned in to talk to the driver, Sgt. Mangelson

noticed an obvious odor of raw marijuana mingled with the distinct smell of air freshener. He observed that the driver was shirtless and had what looked like some kind of t-shirt draped over his shoulder. He asked the driver for his license and registration. He noticed that the driver's hand was trembling, that the driver had an unkept appearance, and also had a "scared to death" look about him.

When he received the documents, Sgt. Mangelson noticed that the driver's license was only a few weeks old, the registration was in the name of third party, and it contained a VIN number that was missing two of the required 17 digits.

Based upon these circumstances, he determined that he had probable cause to search the vehicle for drugs. He asked the driver if there were drugs in the vehicle. The driver replied, "no." He then told the driver to open the trunk by using the Spanish word for trunk. The driver got out of the vehicle, put on his t-shirt and opened the trunk. Sgt. Mangelson returned the license to the driver and began to look through the trunk. Sgt. Mangelson found a package hidden inside the right rear side quarter panel and suspected that it contained drugs. He asked the driver to step to the right of the vehicle. He told the driver he was stopped because of the broken taillight and missing front plate and asked to see the license again. Sgt. Mangelson took the license and handcuffed the driver. Approximately four minutes elapsed between the time that the driver was stopped and when he was placed in handcuffs.

Sgt. Mangelson further questioned the driver, searched the trunk, and found three packages of what turned out to be methamphetamine. He ran the vehicle's license plates and called for backup. He then asked the driver about the packages of drugs and about

the owner of the car. He placed the driver on the ground and searched the back seat and then looked in the glove box.

UHP Trooper McWilliams answered the call for backup. The officers conferred and Sgt. Mangelson explained he had found the packages. Trooper McWilliams went to the vehicle and noticed it contained a lot of trash, had a strong odor of air fresheners and the odor of marijuana. He began to also search the vehicle. Approximately 13 minutes after Trooper McWilliams arrived and 33 minutes after the vehicle was stopped, the officers had the following conversation:

McWilliams: You didn't find any marijuana did you?

Mangelson: No. You smell it?

McWilliams: Isn't that just debris there? I just found some rolling papers and a little bit of marijuana.

Mangelson: You know, I thought I could smell it once - -

McWilliams: That's what I- -

Mangelson: At one point in time.

McWilliams: When I first had my head in there that's what I thought.

Ex. A at 14:13. Trooper McWilliams later found marijuana in the pouch behind the driver's seat in a baggy.

## II. CONCLUSIONS OF LAW

Defendant moves to suppress the search of the trunk because he contends that (1) the scope of the stop exceeded the scope of the initial traffic stop without intervening justification; (2) the search was not based on probable cause; (3) the smell of marijuana

would provide probable cause to search only the passenger compartment and not the trunk; and (4) lack of consent. The government contends that there was a lawful traffic stop and detention and probable cause existed for a warrantless search.

The court notes that the government does not contest Defendant's standing to contest the search of the vehicle nor does it assert that Defendant consented to the search. Defendant does not argue that the initial traffic stop was not justified at its inception. Accordingly, the court need not address those issues and will turn to the remaining issues.

> The Fourth Amendment prohibits unreasonable searches and seizures by the Government. U.S. Const. amend. IV. Its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu,* 534 U.S. 266, 273 (2002). A routine traffic stop constitutes an investigative detention and is examined under the principles announced in *Terry v. Ohio,* 392 U.S. 1, 19-20(1968).
>
> The first inquiry under *Terry* is whether the stop was justified at its inception. "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina,* 71 F.3d 783, 787 (10th Cir. 1995).
>
> The second *Terry* inquiry is whether the officer's conduct during the detention was reasonably related in scope to the circumstances which justified the initial stop. *Terry,* 392 U.S. at 20. An officer may detain a motorist for questioning unrelated to the initial traffic stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning. [Where it] is undisputed that [the defendant] did not consent to any search [the] question is whether [the officer] had an objectively reasonable and articulable suspicion of illegal activity that would justify prolonging the detention.
>
> [The defendant] argues that, when viewed one-by-one, the factors did not give rise to reasonable suspicion. The Supreme Court has expressly rejected this sort of "divide-and-conquer" analysis; a court may not evaluate and reject each factor in isolation. *United States v. Arvizu,* 534 U.S. at 274.

> When determining whether there was reasonable suspicion, a court must look to the "totality of the circumstances" to see whether the officer had a "particularized and objective basis for suspecting legal wrongdoing ." *Arvizu,* 534 U.S. at 273.

*U.S. v. Williams*, __ F.3d __, 2005 WL 880893, *2-3 (10th Cir. 2005)(internal citations partially omitted).

In the present case, as noted, Defendant does not challenge the validity of the initial stop. The court finds that Sgt. Mangelson was justified in stopping Defendant because he observed the broken taillight and the vehicle was missing a front license plate required under Utah and Colorado law.

Turning to the second *Terry* factor, when Sgt. Mangelson's smelled the odor of raw marijuana, he had reasonably articulable suspicion that illegal activity had occurred and was justified in prolonging the stop beyond the investigation of his initial reasons for the stop–the taillight and license plate. Defendant contests Sgt. Mangelson's testimony that he smelled marijuana because, among other things, he did not initially discuss it with Trooper McWilliams. However, the court finds Sgt. Mangelson's and Trooper McWilliams' testimony that they had smelled marijuana to (1) be credible; and (2) supported by their subsequent casual discussion about trying to find the marijuana that they both thought they had smelled. The fact that when Trooper McWilliams arrived Sgt. Mangelson informed him that he had found what he suspected was several packages of methamphetamine, but not about his having smelled marijuana, does not impeach that credibility -- the information about already having discovering several packages of suspected illegal substances being the more important information.

Defendant contends that the search of the car was not based upon probable cause.

> "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Downs,* 151 F.3d 1301, 1303 (10th Cir. 1998) "The scope of a warrantless search of an automobile 'is defined by the object of the search and the places in which there is probable cause to believe that it may be found.' " *United States v. Nielsen,* 9 F.3d 1487, 1491 (10th Cir. 1993) (quoting *United States v. Ross,* 456 U.S. 798, 824 (1982)). "It is well established that although probable cause to search a car may not exist when a car is first stopped for a traffic citation, it can arise during the course of the stop." *United States v. West,* 219 F.3d 1171, 1178 (10th Cir. 2000) (citing *Colorado v. Bannister,* 449 U.S. 1 (1980)).
>
> "An officer's detection of the smell of drugs . . . in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause." *West,* 219 F.3d at 1178; *see also United States v. Ozbirn,* 189 F.3d 1194, 1200 (10th Cir. 1999) (holding that odor of raw marijuana, combined with nervous behavior and vague description of travel plans, satisfied probable cause standard). When an officer encounters the smell of raw marijuana, there is the fair probability that the vehicle is being used to transport marijuana "and that the marijuana has been secreted in places other than the passenger compartment." *Downs,* 151 F.3d at 1303.

*U.S. v. Vasquez-Castillo*, 258 F.3d 1207, 1212 -1213 (10th Cir. 2001).

In addition to the smell of raw marijuana, the court finds that the following facts observed by Sgt. Mangelson provided probable cause to search. First, the smell of raw marijuana was mixed with that of air freshener–something that in Sgt. Mangelson's experience was commonly used by drug smugglers to cover up the smell of illegal drugs being transported. Second, the VIN number on the registration was missing digits and, therefore, was likely fictitious information, something that in Sgt. Mangelson's experience and training was a practice employed by drug traffickers. The issue of the driver using fictitious information was reinforced by the third and fourth factors: the driver's license was

nearly new, and the vehicle was registered to a third party, more circumstances common to drug traffickers. These factors, even without the unusual nervousness and "scared to death" look of the Defendant were probable cause to search the vehicle. However, those factors also add to the probable cause supporting the search. Sgt. Mangelson "detected the odor of raw marijuana. Viewing this under the totality of the circumstances," as listed above, the court finds that probable cause existed to search the vehicle. *Vasquez-Castillo*, 258 F.3d at 1213.

Defendant contends that any probable cause did not extend to the trunk. The court disagrees. The smell of raw marijuana, combined with all of the other factors present that, in the officer's training and experience were indicia of drug smuggling, supported a search of the trunk. *U.S. v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003). The cases to the contrary cited by Plaintiff, *United States v. Parker*, 72 F.3d 1444 (10th Cir. 1995) and *United States v. Nielsen*, 9 F.3d 1487 (10th Cir. 1993), involve the smell of *burnt* marijuana–a circumstance the Tenth Circuit has held to require corroborating evidence before a search of the trunk can be initiated. *Parker*, 72 F.3d at 1450. Here, the officers detected the smell of *raw* marijuana, -- indicative of drug distribution.

The court having found that the search was supported by probable cause, the court holds that this search did not violate Mr. Robles Esquivel's Fourth Amendment rights and will deny his Motion to Suppress.

III. ORDER

Based upon the foregoing, it is therefore

ORDERED that Defendant's Motion to Suppress is DENIED. It is further

ORDERED that the time from the filing of the Motion to Suppress through the date of the entry of this Order is excluded from the computation of the Speedy Trial Act time pursuant to 18 U.S.C. § 3161(h)(1)(F) and (J).

DATED April 29, 2005.

BY THE COURT:

TED STEWART
United States District Judge